**CONFEDERATE MEMORIAL ASSOCIATION, INC.; John Edward Hurley; and Mrs. John Tilden Rogers, Appellants,**

v.

**Richard T. HINES, et al.**

**Nos. 91–7154 and 92–7212.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 23, 1993.

Decided June 18, 1993.

David J. Bartone, Washington, DC, argued the cause for appellants.

Kenneth ·I. Jonson, Washington, DC, argued the cause for appellees. With him on the brief was Mark B. Bierbower, Washington, DC.

Before: SENTELLE, HENDERSON and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

We review the District Court's judgment dismissing with prejudice appellants' claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c) (1988), and state law for failure to state any claim upon which relief may be granted. Appellants claim that the District Court committed reversible error in dismissing the RICO claims without granting leave to amend; in dismissing the state claims with prejudice; and in sanctioning them and their attorney under Rule 11 of the Federal Rules of Civil Procedure.

We hold that the District Court did not err in its treatment of the RICO claim. We vacate and remand for further explanation the dismissal with prejudice of the state law claims and imposition of the Rule 11 sanctions.

## I. BACKGROUND

### A. Factual Background

Appellant Confederate Memorial Association, Inc. ("CMA") is an organization dedicated to promoting Southern culture and honoring the South's confederate heritage. CMA owns a museum, the Confederate Memorial Hall ("CMH"), in Washington, D.C., containing artifacts of the Civil War and of Southern culture. Appellant John E. Hurley is CMA's President and Chairman of the .Board. Appellant Mrs. John Tilden Rogers is Vice President and Chairman of a related organization, the Confederate Memorial Committee of the District of Columbia ("CMC").

There are two classes of appellees, the "attorney defendants" (Robert Lamb and James Carlsen) and the "RICO defendants." The RICO defendants also were involved in efforts to honor the Confederate legacy, through either CMC or similar organizations. Appellants allege that many of the RICO defendants have ties to white supremacist groups and have sought to take over CMC

and CMH for their supremacist ends. As part of an alleged conspiracy to take control of CMC, the RICO defendants, among other things, allegedly threatened Hurley and his family and filed a sham lawsuit against appellants, in which at least some of the RICO defendants committed perjury.

Appellants filed suit against the RICO defendants in Virginia state court for "staging a coup" of CMC and misusing its assets. The Alexandria Circuit Court held against them. Stating that "in sixteen years this is probably the most frivolous lawsuit that I have seen" and that appellants' case "has got more holes in it than Swiss cheese," the state court ruled that the RICO defendants were the duly constituted majority of CMC, entitled to use CMC's assets, but imposed a procedure by which Rogers and Hurley could review CMC's financial records. *Confederate Memorial Comm. of the Dist. of Columbia v. Charlesworth*, Ch. No. 17892, slip op. at 3 (Alexandria Cir.Ct. May 23, 1990). Appellants filed, then withdrew, a state court appeal, turning instead to litigate their claim against the RICO defendants in the present action.

## B. *The Federal Suit*

In the federal suit, filed August 20, 1990, appellants raised claims against the RICO defendants under RICO and state law, charging them with defamation, malicious prosecution, infliction of emotional distress, and civil conspiracy. Appellants also sued the attorney defendants, alleging that they had committed legal malpractice and had breached their fiduciary duties during their representation of appellants during the litigation in Alexandria Circuit Court.

Appellants' verbose complaint describes in some detail the litigation in the Alexandria Circuit Court. Then, beginning with the thirty-first paragraph of the complaint, it incorporates all the previous paragraphs and describes a lawsuit brought by some of the defendants against CMA and Hurley in D.C. Superior Court. The forty-third paragraph incorporates paragraphs one through forty-two, then describes litigation in the Fairfax County, Virginia Circuit Court brought by attorney William Beeton (not a party to the present litigation) against plaintiff Hurley, defendant Hines, and the CMA for allegedly unpaid legal fees incurred by attorney Beeton "in litigating to save and retain the so-called 'Johnny Reb' mascot of Fairfax County High School." At paragraph fifty-two, the complaint announces a heading "VIOLATIONS OF THE RACKETEER AND CORRUPT ORGANIZATIONS ACT." Thereafter, it incorporates paragraphs one through fifty-one and finally sets forth a rambling discourse apparently designed to allege a RICO claim.

Counts II through V (paragraphs seventy-four through ninety) purport to allege claims for "malicious prosecution and wrongful use of the civil process," "defamation of character," "emotional distress," and "civil conspiracy" against some or all of the RICO defendants. Counts VI and VII purport to allege claims for "legal malpractice" and "breach of fiduciary duty" against the attorney defendants for acts and omissions relating to their representation of plaintiffs in the earlier litigation.

The RICO defendants moved to dismiss for failure to state a claim upon which relief can be granted, and the attorney defendants moved to dismiss for lack of subject-matter jurisdiction. Appellants filed opposition to both motions, in which they requested an opportunity to amend their RICO claim if the court found the complaint failed to state a claim; however, they made no tender of any proposed amendment. The District Court granted the RICO defendants' motion as to the RICO claim, explaining in open court that "I am satisfied that you have failed to state a RICO claim against any of these defendants and that there is absolutely no basis for a RICO claim to be made here." Accordingly, the court dismissed the RICO claims with prejudice.

Given the dismissal of the RICO claim, the judge expressed doubt "as to whether or not I've got pendent jurisdiction over anything else." Nonetheless, the court dismissed the state law claims without prejudice on procedural grounds, finding that the complaint was not a "short, plain statement of a claim upon which relief can be granted," as required by

Rule 8(a)(2) of the Federal Rules of Civil Procedure. Unless appellants filed a complaint satisfying Rule 8(a)(2) within ten days, the District Court warned, "the complaint stands dismissed with prejudice."

Not wishing to suffer dismissal with prejudice of their state law claims, appellants, after securing several extensions of time, filed on April 15, 1991 an amended complaint, virtually identical to the original state law claims, except that the defamation claim and three of the original defendants were deleted. Appellees responded with three separate motions to dismiss. Finding that, notwithstanding the modifications to the complaint, "plaintiff[s] ha[ve] failed to comply with F.R.Civ.P. 8(a)," the District Court dismissed the amended complaint with prejudice on August 5, 1991. *Confederate Memorial Ass'n, Inc. v. Hines*, No. 90-2012, at 1 (D.D.C. Aug. 5, 1991) (order dismissing amended complaint). As an additional ground for dismissing the amended complaint, the court ruled that without a federal claim to confer pendent jurisdiction, "this Court lacks subject matter jurisdiction over the claims made in the amended complaint." *Id.*

The RICO defendants thereafter moved for sanctions under Rule 11 of the Federal Rules of Civil Procedure. After briefing by both sides, the court granted the motion on January 23, 1992. In a subsequent fee petition, the RICO defendants claimed they had incurred $98,503.65 in attorneys fees alone in the year that transpired between the filing and ultimate dismissal of the complaint. Nevertheless, they offered to accept a fee award in the amount of $69,066.33, to avoid a drawn-out inquiry into the reasonableness of the $98,503.65 figure. Appellants disputed the propriety of sanctions and, alternatively, the reasonableness of a fee award in either amount sought by the RICO defendants. On September 10, 1992, the District Court en-

tered a final order granting an attorney fee award of $69,066.33.

This appeal followed.

## II. DISCUSSION

### A. *The Dismissal of the RICO Claim*

Appellants' argument on appeal that the District Court erred in dismissing the RICO claim with prejudice is unusual. Normally, litigants whose claims have been dismissed under Rule 12(b)(6) come to us asserting that the District Court erred in determining that they stated no claim upon which relief could be granted. Here, the argument before us is couched in terms of the Court's having erred in dismissing with prejudice without affording appellants an opportunity to amend. At no point do appellants, either in the District Court or before us, mount any serious attempt to defend the sufficiency of the RICO complaint. Although appellants do not in terms admit that their RICO complaint fails to state a claim, we take it as a given for purposes of this appeal.[1] *See Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983) (holding that "where counsel has made no attempt to address [an] issue, we will not remedy the defect").

■ Nonetheless, in an exercise of excessive caution, we have reviewed the complaint to see if the District Court committed plain error in its determination. It did not.

In *Danielsen v. Burnside Ott Aviation Training Center*, 941 F.2d 1220, 1229-30 (D.C.Cir.1991), we set forth the elements necessary for recovery under 18 U.S.C. § 1964(c) (1988), which makes violations of 18 U.S.C. § 1962 (1988) civilly actionable. We will not rehash those elements here, but simply note that appellants failed at a fundamental level to plead the elements of a violation of either 18 U.S.C. § 1962(a), (b), or (c).[2] We further note that for a violation of § 1962 to

---

1. In what may be a half-hearted attempt at upsetting the underlying ruling, appellants do make pointed, multiple references to the trial court's having made no findings of fact to underlie its conclusion that the complaint stated no claim for relief. Although they have not plainly couched this as a ground for reversal, we would nonetheless direct them to FED.R.CIV.P. 52(a) stating: "Findings of fact and conclusions of law are

unnecessary on decisions of motions under Rules 12 or 56."

2. A violation of 18 U.S.C. § 1962(d) can also be actionable, but that section outlaws conspiracies to violate the other three sections and creates no new substantive offense. *See Danielsen*, 941 F.2d at 1232.

be civilly actionable under § 1964, it must result in an injury to plaintiff's "business or property." 18 U.S.C. § 1964(c); *see also Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, 913 F.2d 948, 950 (D.C.Cir.1990) (en banc), *cert. denied,* —— U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). Appellants, while generically alleging injury, do not allege injury of the sort required by RICO, let alone the specific investment-based injury required for a claim under § 1962(a) or the acquisition-based injury required under § 1962(b). *Danielsen*, 941 F.2d at 1229–31. Perhaps the most egregious shortcoming is the failure properly to identify a RICO enterprise, a defect which we will discuss a bit more fully below.

We return, then, to the proposition with which we began discussion of the RICO claim, that is, that appellants assert error, not in the District Court's determination that they had stated no claim, but only in the court's dismissal of their claim with prejudice without entertaining any amendment.

Appellants argue that if allowed to proceed with their RICO claim, they would allege and prove facts entitling them to recovery under RICO. But we are not told what those facts might be. Appellees, by contrast, assert that the complaint was fatally defective in that it failed to allege an enterprise, the elements of any predicate act, or legally cognizable injury to appellants; because each of these is required under RICO, and because appellants could not possibly make allegations to satisfy all of them, they argue, dismissal with prejudice under Rule 12(b)(6) was proper. We agree.

██ It is true, as we have often stated, that "[l]eave to amend should ordinarily be freely granted to afford a plaintiff an opportunity to test his claim on the merits." *Gaubert v. Federal Home Loan Bank Bd.*, 863 F.2d 59, 69 (D.C.Cir.1988) (internal quotation marks omitted). Nonetheless, that "decision in a particular case is left to the discretion of the district court," reviewable only for abuse of that discretion. *Id.* Here, not only do we see no abuse of discretion in the first instance, it appears that appellants never properly requested an opportunity to amend in the District Court.

██ Rule 15(a) allows a party to "amend the party's pleadings once as a matter of course at any time before a responsive pleading is filed." FED.R.CIV.P. 15(a). As a motion to dismiss is not ordinarily considered a "responsive pleading" under Rule 15(a), *see Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 370 (10th Cir.1989), appellants could have amended their complaint as of right prior to the court's decision on the motions. Appellants did not exercise that right. Once the District Court granted appellees' motions to dismiss, appellants could amend the complaint "only by leave of court or by written consent of the adverse party," FED.R.CIV.P. 15(a), coupled with a motion under Rule 59(e) to alter or amend the judgment. We agree with several of our sister circuits that a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought, *cf.* FED.R.CIV.P. 7(b)—does not constitute a motion within the contemplation of Rule 15(a). *See Glenn*, 868 F.2d at 370; *Wayne Inv. Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 15 (1st Cir.1984). As appellants did not properly request leave to amend the RICO claim, it could hardly have been an abuse of discretion for the District Court not to have afforded them such leave *sua sponte.*

We offer two further observations in support of our conclusion that the District Court did not abuse its discretion here. First, appellants effectively have had multiple bites at the apple already. The purported RICO claim was, in effect, a restatement of their previous state court attempt. Second, the law does not require the doing of vain things. As noted above, appellants have yet to demonstrate that they can offer an amendment effective of a valid claim for relief. In particular, the existence of an enterprise is the very first step to a RICO action. Although appellants claim that appellees "had an enterprise," the complaint never identifies one. Nowhere in the District Court proceedings did appellants ever identify the enterprise. Nowhere in their briefs did they identify their enterprise. When asked at oral argument, appellants' counsel stated first that Jefferson Davis Camp No. 305, Sons of Confederate Veterans, was the enterprise. He

then seemed surprised when informed by the court that the same entity cannot be the RICO enterprise and a RICO defendant. *See Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, 839 F.2d 782, 790 (D.C.Cir.1988) (holding that "one entity may not serve as the enterprise and the person associated with it"), *vacated in part on other grounds*, 913 F.2d 948 (D.C.Cir.1990) (en banc), *cert. denied,* — U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). Next, appellants' counsel asserted that all the defendants together were the enterprise, a substitution that hardly solved the inconsistency with *Yellow Bus.*

Also, because the complaint fails to allege that appellants suffered injury from violations of § 1962, as analyzed by this court in *Danielsen*, 941 F.2d at 1230–31, the complaint necessarily fails to state a civil RICO claim as to CMA.

In short, we find no abuse of discretion in the remedy chosen by the District Court upon the granting of the Rule 12(b)(6) motion.

### B. *The Pendent Claims*

Though we leave undisturbed the District Court's ruling as to the RICO claim, we vacate and remand the dismissal with prejudice of the pendent claims under state law. At the outset of this discussion, we wish to make clear that we neither construe nor apply 28 U.S.C. § 1367 (Supp. II. 1990), which now governs "supplemental jurisdiction" of the district courts, including what was previously called pendent jurisdiction. *See* 28 U.S.C.A. § 1367, David D. Siegel, Practice Commentary. That section applies only to civil actions "commenced on or after the date of enactment" of the Act, December 1, 1990. Pub.L. No. 101–650, § 310(c), 104 Stat. 5089, 5114 (1990). As the present action was filed before that date, our discussion speaks in terms of the *corpus juris* before section 1367.

The state law claims against the RICO defendants were properly before the District Court in the first instance only through pen-

dent jurisdiction, described in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), as "judicial *power* exist[ing] whenever there is a [federal] claim . . . and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *Id.* at 725, 86 S.Ct. at 1138.[3]

■ However, the judicial power over pendent claims has always been recognized as a discretionary one, and "the Supreme Court has made it plain that '[c]ertainly if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'" *Danielsen*, 941 F.2d at 1232 (quoting *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139). Therefore, we have no difficulty with the District Court's having, in the first instance, dismissed the claims *without* prejudice.

Where we perceive some possible misunderstanding is in the subsequent dismissal *with* prejudice. While it is likely that the District Court only intended to attach prejudice to the claimed federal jurisdiction in the case, it is unfortunately also likely or, at least possible, that should appellants seek to pursue their claims in state court, the dismissal with prejudice might be pled as *res judicata*, as it is the usual rule that such a dismissal "operates as an adjudication upon the merits." FED.R.CIV.P. 41(b). We therefore will remand the state law claims to the District Court either for dismissal without prejudice or for clarification as to why such a dismissal is not the proper result.

### C. *The Imposition of Rule 11 Sanctions*

■ The only issue remaining for decision—whether the award of attorneys fees under Rule 11 was appropriate—may be disposed of in short order. *See* FED.R.CIV.P. 11. We review all aspects of decisions imposing sanctions under Rule 11 only for abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359, 381–82 (1990).

---

**3.** As to the state law claims against the attorney defendants, it is not apparent that the court ever had any jurisdiction. The claims against the attorneys for alleged professional default do not constitute in any sense "one case" with the strug-

gle for control for CMC, CMA, and their assets, out of which the attempted RICO claims arose. There is no allegation of any other jurisdictional base.

Though the standard of review is deferential, the fact remains that decisions to impose sanctions under Rule 11 "[are] as much a subject of appellate review as any other." *Weisberg v. Webster*, 749 F.2d 864, 873 (D.C.Cir.1984). In some cases effective appellate review is impossible, unless the District Court explains its reasons for imposing sanctions. *Id.* at 874 n. 59 (stating that findings are "essential to effective appellate review") (citing FED.R.CIV.P. 52); *see also Harris v. Heinrich*, 919 F.2d 1515, 1516–17 (11th Cir.1990) (per curiam) (same). Especially is this true where an undifferentiated award is entered against an attorney and a client. Rule 11 specifies that

> the signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

FED.R.CIV.P. 11. The Rule further provides that when a pleading (such as the complaint in this case) is signed in violation of the rule, the court "shall impose an appropriate sanction upon the person who signed it, a represented party, or both." *Id.* In principle, therefore, there is no problem with the imposition of sanctions against both the appellants and their attorney in this case. However, as we noted in *Weisberg v. Webster*, 749 F.2d 864, 875 (D.C.Cir.1984), which concerns the imposition of sanctions for breach of Rule 37, but raises problems parallel to those existing in this Rule 11 case, the rule "treats the client and his attorney separately." 749 F.2d at 874. In this case, it may well be that the sanctions against the attorney will be as justified as those found against the attorneys sanctioned in *Cooter & Gell*. It may well be that the sanctions against the client are as justifiable as those in *Weisberg*. However, we cannot determine whether this is true without some findings of fact.

We hasten to make clear that we make no decision as to whether the District Court abused its discretion, either in the imposition of the sanctions on the parties and counsel together or in the nature of the sanctions. We simply vacate the order and remand it for further explication in order that we may accurately make that determination. In doing so, we note that the court did not make explicit findings of fact on either the exact basis underlying the sanctions or the reasonableness of the exact sanction chosen. It might well be that we could, by sifting the record, determine the implicit findings which underlay both of these determinations. However, as we are vacating and remanding that portion of the order in any event, we note that any further appellate review of these sanctions would be greatly assisted by explicit findings on these subjects, as well.

### III. CONCLUSION

In short, we affirm the District Court's dismissal of the RICO claim with prejudice. We vacate and remand the dismissal with prejudice of the pendent claims for a new order dismissing without prejudice, or else an explanation for the dismissal with prejudice. We vacate and remand the imposition of sanctions, for further findings.

*It is so ordered.*