# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 17, 2010

No. 09-20681
Summary Calendar

Charles R. Fulbruge III
Clerk

CAPTAIN CHEYNE PARHAM, Individually and as Next Friend of M.E. Parham and E.J. Parham; MARY JOY PINGCA PARHAM; M.E. PARHAM; E.J. PARHAM,

Plaintiffs - Appellants

v.

SECRETARY HILLARY CLINTON, Secretary of State of the United States; EDWARD BETANCOURT, In His Official Capacity; LISA MOOTY, In Her Official Capacity and Individual Capacity,

Defendants - Appellees

Appeal from the United States District Court for the
Southern District of Texas
U.S.D.C. No. 4:09-CV-1105

Before REAVLEY, JOLLY, and OWEN, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-20681

Appellants seek reversal of the district court's order dismissing their case on the pleadings for lack of jurisdiction and alternatively for failure to state a claim. Having reviewed the district court's order and the record, we find no error and affirm.

We review a district court's order dismissing a case on the pleadings de novo. *See LeClerc v. Webb*, 419 F.3d 405, 413 (5th Cir. 2005).

Appellants first argue that the district court erred in determining that it had no jurisdiction over their claims for citizenship. Specifically, they argue that jurisdiction exists to declare M.E. and E.J. citizens of the United States pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. However, as the district court properly held, declaratory relief under § 2201 is appropriate only when there exists an independent basis for jurisdiction. *See Simi Inv. Co. v. Harris County, Tex.*, 236 F.3d 240, 247 (5th Cir. 2000) (noting "that Declaratory Judgment Act claims, without another basis for jurisdiction, cannot support the district court's jurisdiction"). While Appellants' complaint cites to various federal statutes and constitutional amendments, the district court properly held that none of these statutes or provisions create a jurisdictional nexus to an alleged harm based on Appellants' pleaded facts.[1]

The only statute brought to our attention that conceivably provides jurisdiction for persons in Appellants' circumstances is 8 U.S.C. § 1503. However, both parties acknowledge that Appellees must issue a final administrative decision before Appellants may seek judicial review under this

---

[1] The court properly held, for example, that 42 U.S.C. § 1983 and 18 U.S.C. § 242 provide no jurisdiction over the acts of federal agencies, as the former is reserved for constitutional claims against state actors, and the latter is a criminal statute with no correlating civil cause of action. Appellants have conceded these arguments and have not raised them on appeal. In addition, the district court properly held that Appellants have failed to plead or argue the necessary elements for mandamus under 28 U.S.C. § 1361. *See also Cartier v. Sec'y of State*, 506 F.2d 191, 200 (D.C. Cir. 1974) (mandamus inappropriate when remedies available pursuant to 8 U.S.C. § 1503).

No. 09-20681

statute. At the time Appellants filed their case in the district court, they had received no final administrative decision regarding their petitions for Consular Reports of Birth Abroad ("CRBA"). Therefore, there had been no denial of a "right or privilege" based on a claim of citizenship pursuant to § 1503.[2] Accordingly, the district court properly concluded that it lacked jurisdiction to review Appellants' claims.[3]

Appellants also cite *Miller v. Albright*, 523 U.S. 420, 118 S. Ct. 1428 (1998), to support their argument that the district court has jurisdiction over their claims of citizenship and for declaratory relief. However, *Miller* is readily distinguishable from the instant case. In *Miller*, a woman who had been born out of wedlock to an American service member and a Filipina woman challenged the constitutionality of the gender-specific requirements for proof of paternity

---

[2] It is unclear whether § 1503(a) or § 1503(b) would be the more appropriate vehicle to contest a final agency decision in Appellants' circumstances. The district court reviewed Appellants' claim under § 1503(a), which provides for declaratory relief pursuant to 28 U.S.C. § 2201 from a final agency decision denying a right or privilege conditioned on a claim of citizenship for "any person who is within the United States . . . ." *See* § 1503(a). Despite this plain language limiting § 1503(a) to persons within the United States, the Supreme Court has interpreted § 1503(a) to allow declaratory relief for plaintiffs outside the United States. *See Rusk v. Cort*, 369 U.S. 367, 372, 82 S. Ct. 787, 790 (1962), *abrogation on other grounds recognized by Califano v. Sanders*, 430 U.S. 99, 105, 97 S. Ct. 980, 984 (1977); *see also Kahane v. Sec'y of State*, 700 F. Supp. 1162, 1165 n.3 (D.D.C. 1988) (citing *Rusk* for the proposition that "[p]ersons outside the United States may sue under § 1503(a) to establish United States citizenship"). Meanwhile, § 1503(b) refers specifically to "any person who is not within the United States" and applies to "a person under sixteen years of age who was born abroad of a United States citizen parent." § 1503(b). E.J. and M.E. are currently in the Philippines and claim to be "born of" Captain Parham, a United States citizen. Thus, § 1503(b) appears to be the more appropriate fit. However, we need not decide which of these two provisions is appropriate. Both provisions contemplate a final agency decision before judicial review is available. *See* § 1503(a)-(b). Accordingly, judicial review is currently inappropriate under either provision.

[3] Both parties have stated in their appellate briefs that the State Department issued a decision denying Appellants' petition for CRBAs after the district court granted Appellees' motion to dismiss. We express no opinion as to whether this agency decision makes this controversy now ripe for adjudication. The agency's decision, whatever it is, is not included in the record, it is not cited in the complaint as the basis for any cause of action, and it did not form part of the district court's reasoning when it properly dismissed the case.

3

in 8 U.S.C. § 1409(a)(4). *Id.* at 432, 118 S. Ct. at 1436. As a threshold issue, the Court stated that the woman had standing to invoke the jurisdiction of the federal courts because a "judgment in her favor would confirm her pre-existing citizenship rather than grant her rights that she does not now possess." *Id.* Standing, however, is only half of the jurisdictional question before us. Even assuming that M.E. and E.J. are citizens with the proper standing to contest Appellees' allegedly unconstitutional procedures and requirements, Appellants have yet to assert a claim that is ripe for adjudication. *See LeClerc*, 419 F.3d at 413-14 (requiring both standing and ripeness as grounds for Article III jurisdiction). In *Miller*, the plaintiff had applied for registration as a United States citizen and the application had been denied four months later. *See Miller v. Christopher*, 870 F. Supp. 1, 1-2 (D.D.C. 1994). That denial was subsequently upheld eight months after that. *Id.* at 2. In contrast, Appellants' complaint shows that when Appellants brought their claim in April 2009, their petition for CRBAs had not been denied but had been pending for less than four months. Therefore, inasmuch as *Miller* provides grounds for M.E. and E.J. to challenge the constitutionality of Appellees' procedures, it still only does so once Appellants have a final agency decision to contest (and arguably after they have complied with the other relevant provisions in § 1503). As Appellants had no final decision from Appellees at the time they filed their complaint, we need not express an opinion on whether *Miller* would otherwise confer jurisdiction.

Appellants next argue that the district court erred in not permitting them to replead their causes of action to correct any purported deficiencies. Federal Rule of Civil Procedure 15(a) allows plaintiffs to amend their pleadings once as a matter of course within a certain time, and then subsequently "when justice so requires." *See* FED. R. CIV. P. 15(a). However, a "'bare request in an opposition to a motion to dismiss – without any indication of the particular grounds on which the amendment is sought . . . does not constitute a motion

No. 09-20681

within the contemplation of Rule 15(a).'" *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (quoting *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)). Appellants never filed a motion to amend their complaint pursuant to Rule 15(a) but merely stated in their response to Appellees' motion to dismiss that "should the Court find that Plaintiff's [sic] pleadings fail to fully notice Defendant [sic] of Plaintiff's [sic] complaints, Plaintiff [sic] requests leave to amend Plaintiffs' [sic] pleadings to more fully develop the issues before the court." We hold this to be insufficient to constitute a motion to amend under Rule 15(a). *See id.* Therefore, the district court did not err in not allowing Appellants to amend their complaint.

Finally, Appellants argue that they maintain a claim for state-law defamation against Appellee Lisa Mooty in her individual capacity.[4] However, the district court properly disposed of Appellants' defamation claims as being barred by sovereign immunity and outside the limited waiver of the Federal Tort Claims Act, 28 U.S.C. § 2679. As to claims against Mooty in her individual capacity, the district court properly held that any defamation claim pursuant to *Bivens v. Six Unknown Named Narcotics Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971), also failed because there is no constitutional right to be free from defamation. *See Siegert v. Gilley*, 500 U.S. 226, 234, 111 S. Ct. 1789, 1794 (1991) (holding that defamation resulting in damage to a person's reputation "is not recoverable in a *Bivens* action"). Appellants do not dispute the district court's ruling on sovereign immunity or the FTCA, nor do they provide any argument why the district court erred in not finding a *Bivens* claim. Instead, Appellants argue for the first time on appeal that Mooty acted outside the scope of her employment in making the alleged defamatory comments. We will not consider arguments that do not have a factual basis in the pleadings and

---

[4] It is unclear from the complaint under which state law the claims arise.

No. 09-20681

that are raised for the first time on appeal.[5]  *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) (citing *United States v. Garcia-Pillado*, 898 F.2d 36, 39 (5th Cir. 1990)).

AFFIRMED.

---

[5] Were we to consider Appellants' scope of employment argument on the merits, it would nonetheless fail.  According to the complaint, Ms. Mooty's job was to determine whether individuals such as M.E. and E.J. were eligible for United States citizenship based on their familial relationship to a United States citizen pursuant to 8 U.S.C. § 1401(g).  The complaint further states that the only alleged defamatory statements that Ms. Mooty personally made were in a phone call to Captain Parham when he was stationed in Kentucky.  Such statements concerned only Captain Parham and Mary Joy, who was then in the Philippines.  Assuming a claim for defamation exists under these circumstances that is cognizable in this court, any statements Ms. Mooty may have made expressing doubt in the twins' familial relationship with Captain Parham clearly fell within her scope of employment.