**Robert J. NESMITH,**
**Plaintiff–Appellant,**

v.

**MARTIN MARIETTA AEROSPACE,**
**d/b/a Martin Marietta Aerospace,**
**Orlando, Florida, Defendant–Appellee.**

No. 86–3652
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Dec. 15, 1987.

---

Robert J. Nesmith, pro se.

Thomas C. Garwood, Garwood & McKenna, Orlando, Fla., for defendant-appellee.

Before RONEY, Chief Judge, HILL and FAY, Circuit Judges.

PER CURIAM:

This appeal is from a judgment for defendant after a bench trial of this Title VII action brought by plaintiff Robert J. Nesmith. Nesmith alleges that his employer, Martin Marietta Aerospace (MMA), discriminated against him because of his race and discharged him in retaliation for filing a discrimination suit with the Equal Employment Opportunity Commission. We affirm the judgment on the merits and the award of $2,000 in attorney's fees against plaintiff.

Representing himself at a consolidated trial of separate actions for discrimination and retaliation, Nesmith called a number of witnesses, including an MMA official, for cross-examination. Nesmith also testified. MMA then moved for a dismissal under Fed.R.Civ.P. 41(b) on the ground that Nesmith had failed to establish a *prima facie* case of discrimination or of retaliation and asked for an award of attorney's fees and costs. The court entered judgment, based on findings of fact and conclusions of law, dismissing the plaintiff's claims with prejudice and awarding MMA attorney's fees and costs.

■ The law is clear concerning the requirements for proving cases of this kind. *See Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1184 (11th Cir. 1984); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 688 (1973); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The trial testimony and the documentary evidence support the court's conclusion that neither Nesmith's race nor his filing charges played a role in MMA's actions toward him. There is little that need be said of the district court's findings in this regard. Nesmith's career thrived, with many promotions and salary increases, during the presidency of Robert Whalen, his mentor, and faltered when Whalen left the company. Whalen's endorsement, not Nesmith's abilities, explained his rapid advancement during Whalen's tenure at MMA. Nesmith had been promoted to a level at which he was unable to perform satisfactorily and, as a consequence, he experienced periods without assignments despite MMA's efforts to accommodate him.

Nesmith was away from his job on medical leave, at a salary of over $40,000 a year, during much of 1984–85. Following MMA's last effort to find a suitable position for him in the manufacturing department, Nesmith began a period of paid medical leave which lasted six months, with extensions. At the conclusion of Nesmith's leave, he was terminated. There is no evidence which requires a finding that MMA's action was based on race.

The record also supports the district court's finding that Nesmith was not fired in retaliation for his equal employment opportunity activities at the company. Indeed, the court found that his early rapid advancement at MMA was related to his efforts on behalf of black and female employees of MMA. Even in his last years there, the company appeared to be extremely tolerant in attempting to find a satisfactory position for him and in according him leave for his medical problems.

Not being clearly erroneous, the district court's findings, including its finding on the "ultimate" issue of intentional discrimination, must be affirmed. Fed.R.Civ.P. 52(a); *Pullman–Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982).

■ The district court held that MMA was entitled to an award of attorney's fees under both Title VII and Federal Rule Civil Procedure 11. Were the award based on Rule 11 only, we would be inclined to reverse. That Rule is a sanction against bad faith litigation. The Rule provides that a lawyer, or a party, if unrepresented, must sign every pleading which means that:

> to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11.

The standard for imposing Rule 11 sanctions is more stringent than other attorney's fees statutes because it requires the additional element of bad faith. The amended rule incorporates an objective standard in assessing bad faith. *See Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir.1987) (*in banc*). The standard requires a determination as to whether the party's conduct was reasonable under the circumstances. *Id.*

The district court without discussion determined that Nesmith's suit was brought for an improper purpose. There is insufficient evidence to support this conclusion. The evidence Nesmith presented not only failed to indicate discriminatory treatment, but instead revealed that Nesmith received several salary increases and promotions during his tenure. Nesmith made no showing that other similarly situated members of the unprotected class were treated preferentially nor did he present evidence of retaliation. Under these circumstances, it is apparent that Nesmith's claim may be characterized as without foundation, but there is no evidence that he was in bad faith in bringing the claim, or that it was brought for any purpose other than to receive what he thought he was entitled to under the law.

■ The standards for awarding Title VII attorney's fees under the statutory provisions of Title VII have a different base. In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978) the Supreme Court held that "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." It appears clear from the facts in this case that the district court was well within its discretion in imposing attorney's fees under the *Christiansburg* standard.

■ The amount of attorney's fees was properly modified by the district court in consideration of the plaintiff's ability to pay. *See Durrett v. Jenkins Brickyard, Inc.* 678 F.2d 911, 917 (11th Cir.1982).

AFFIRMED.